654

884 P.2d 810

In the Matter of the Petition for Approval to Transfer by Operation of Law a Certificate of Public Convenience and Necessity.

ENMR TELEPHONE COOPERATIVE, a New Mexico cooperative association, Removant–Appellant,

v.

NEW MEXICO STATE CORPORATION COMMISSION, Removee–Appellee.

No. 21272.

Supreme Court of New Mexico.

Nov. 7, 1994.

Montgomery & Andrews, P.A., Stephen S. Hamilton, Santa Fe, Michael T. Garrett, Clovis, for appellant.

Tom Udall, Atty. Gen., David M. Kaufman, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

BACA, Chief Justice.

Removee–Appellee's motion for rehearing is denied. The opinion filed September 6, 1994, is withdrawn and the following is substituted therefor.

Appellant–Removant, ENMR Telephone Cooperative ("ENMR"), challenges an order of the New Mexico State Corporation Commission (the "Commission"). The order required ENMR to submit to a regulatory audit, to contract with an auditor of the Commission's choosing, and to pay for the audit. We address one issue on appeal: Whether the Commission had the authority to require that ENMR pay for the regulatory audit. We review this case pursuant to SCRA 1986, 12–102(A)(4) (Repl.Pamp.1992), and vacate the Commission's order.

I.

On November 9, 1992, RSA New Mexico 2 Cellular Partnership (the "Partnership") filed a petition with the Commission seeking to transfer to ENMR a certificate of public convenience and necessity (the "Certificate"). The Certificate authorized the Partnership to serve the public within a designated area in New Mexico with mobile wireless cellular telecommunications. The Partnership sought to transfer the Certificate because ENMR, owner of fifty percent of the Partnership, was in the process of acquiring the other fifty percent partnership interest.

An amended petition was filed on December 29, 1992, and the Commission held a hearing on the matter on January 22, 1993. On March 1, 1993, the Commission filed its findings of fact, conclusions of law, and order, in which it approved the transfer of the Certificate. The Commission also ordered that a regulatory audit of ENMR be performed within sixty days by an independent accounting firm selected by the Commission. The issue of how the audit should be funded was taken under advisement and the Commission solicited briefs on the issue from the parties involved.

On April 21, 1993, the Commission filed its second set of findings of fact, conclusions of law, and order. The Commission found that no parties other than the Commission staff had filed briefs on the issue of whether ENMR should pay for the regulatory audit. The Commission decided that it had "ample constitutional authority to order ENMR to pay for the costs of [the] regulatory audit" and ordered that ENMR pay for the audit.

On May 5, 1993, the Commission filed supplemental findings of fact, conclusions of law, and an order. The Commission noted, contrary to its previous findings, that ENMR had in fact filed a brief on whether the Commission could order it to pay for the regulatory audit. After discussing the arguments raised by ENMR's brief, the Commission again concluded that it had the constitutional authority to require ENMR to pay for the audit.

The Commission staff filed a notice of compliance on May 13, 1993. The Notice formally recommended that the independent accounting firm of A.J. Rowe and Associates ("Rowe") be designated to perform the regulatory audit of ENMR. The Commission then filed an order requiring ENMR to contract with Rowe by June 4, 1993.

ENMR filed a petition to remove cause to the Supreme Court on June 4, 1993. The Commission entered an order of removal on June 11, 1993, ordering that the cause be "removed to the New Mexico Supreme Court for review and enforcement pursuant to Article XI, Section 7, of the New Mexico Constitution."

## II.

■ On appeal, we address whether the Commission had the authority to order ENMR to pay for the regulatory audit ordered by the Commission. The Commission first argues that it had the authority to order ENMR to pay for the audit under Article XI, Section 7, of the New Mexico Constitution. This constitutional provision states in relevant part that

> [t]he commission shall have power and be charged with the duty of fixing, determining, supervising, regulating and controlling all charges and rates of railway, express, telegraph, telephone, sleeping car and other transportation and transmission companies and common carriers within the state and of determining any matters of public convenience and necessity relating to such facilities as expressed herein in the manner which has been or shall be provided by law[.]

N.M. Const. art. XI, § 7. The Commission contends that its powers under this Section are clear and all-inclusive, and so broad that little room is left for judicial construction. *See Las Cruces TV Cable v. New Mexico State Corp. Comm'n (In re Generic Investigation Into Cable Television Servs.)*, 103 N.M. 345, 349, 707 P.2d 1155, 1159 (1985) (stating that the Section "gives the Commission broad powers and duties with respect to all charges and rates of ... telephone companies"); *Mountain States Tel. & Tel. Co. v. New Mexico State Corp. Comm'n*, 90 N.M. 325, 334, 563 P.2d 588, 597 (1977) (stating that the Commission's power to fix rates is "so broad that little room is left for construction"). The Commission maintains that it had the authority to order payment for the regulatory audit under the broad, all-inclusive power granted by Article XI, Section 7.

■ We do not agree that Article XI, Section 7 grants the Commission the authority to require a regulated entity to pay for an audit. Although this Section grants the Commission broad authority to act in the public interest in matters of ratemaking and in matters of public convenience and necessity, the Commission's authority is not without limit. *See AA Oilfield Serv., Inc. v. New*

*Mexico State Corp. Comm'n,* 118 N.M. 273, 277, 881 P.2d 18, 22 (1994) (No. 20,771). Under Article XI, Section 7, the Commission is only permitted to exercise its authority as "provided by law." N.M. Const. art. XI, § 7; *AA Oilfield Serv., Inc.,* 118 N.M. at 276, 881 P.2d at 21. The Commission must comply with, and is limited by, applicable statutes, its constitutional mandate, and existing Commission rules and regulations. *Id.*

We note that the Commission has not directed this Court to any statute authorizing it to order regulated entities to fund Commission-ordered audits. Our research shows the existence of three legislative acts and one statute that could potentially grant the Commission the power to order payment of regulatory audit fees. The Telephone and Telegraph Company Certification Act, NMSA 1978, Sections 63–9–1 to –19 (Repl. Pamp.1989), the New Mexico Telecommunications Act, NMSA 1978, Sections 63–9A–1 to –20 (Repl.Pamp.1989), and the Cellular Telephone Services Act, NMSA 1978, Sections 63–9B–1 to –14 (Repl.Pamp.1989) all provide for extensive Commission regulation of telephone, telegraph, and cellular phone services in matters of ratemaking and public convenience and necessity. However, no provision in any of these acts grants the Commission the authority to require regulated entities to pay for regulatory audits. Furthermore, NMSA 1978, Section 53–2–1 (Cum.Supp.1993) (entitled "[f]ees of state corporation commission") provides a comprehensive and extensive outline of the fees the Commission shall charge and collect from regulated companies, but contains no provision requiring payment of a fee or charge for regulatory audits. We find no statute authorizing the Commission to impose the cost of a regulatory audit upon ENMR.

The Commission also argues that it had the authority to order ENMR to pay for the audit under Article XI, Section 11 of the New Mexico Constitution. This Section states in pertinent part that

[t]he commission shall have the right at all times to inspect the books, papers and records of all such companies and common carriers doing business in this state, and to require from such companies and common carriers from time to time special reports and statements, under oath, concerning their business.

N.M. Const. art. XI, § 11. The Commission maintains that a company must pay the costs of generating a special report when it requires the company to submit such a report. The Commission contends that it was merely requiring ENMR to submit and pay for a special regulatory report when it ordered ENMR to submit to and pay the cost of the regulatory audit.

We find the Commission's argument to be untenable. Article XI, Section 11 is fairly limited in its scope, unlike Article XI, Section 7, which provides the Commission a general grant of authority. Thus, Article XI, Section 11 cannot be read as granting authority outside of what the provision actually says. Under the clear language of Article XI, Section 7, the Commission could require ENMR to submit a special report containing the information the Commission sought to obtain from a regulatory audit. However, neither this constitutional provision, nor any other constitutional provision, grants the Commission authority to order ENMR to pay for the Commission's own regulatory audit under the pretense of "requiring a special report."

In conclusion, we hold that no statute, constitutional provision, or regulation empowers the Commission to order ENMR to fund the Commission's regulatory audit of the company. Under Article XI, Section 11, the Commission could have ordered ENMR to submit a special report containing the information that the Commission sought to obtain from the regulatory audit. As a practical matter, ENMR would likely have hired an auditing firm to generate the special report, and ENMR would have been responsible for paying the firm as a cost of generating the report. Furthermore, the Commission had the authority to set appropriate minimum standards for the quality of any report pursuant to its power to act in the public interest in matters of public convenience and necessity. Setting minimum standards insures that the information obtained in a report would be helpful in addressing the Commission's concerns about ENMR's financial condition.

In the alternative, the Commission could have ordered a regulatory audit with a firm of its choosing and paid for the audit with administrative funds appropriated from the legislature. Article XI, Section 5 of the New Mexico Constitution requires that the legislature provide funds for the Commission's lawful expenses. NMSA 1978, Section 53–1–6 (Repl.Pamp.1993) establishes the "state corporation commission administrative fund" and requires that the Commission "disburse such sums [from the fund] as are necessary to defray the expenses of administering the business of the [Commission]." We vacate the Commission's order.

**IT IS SO ORDERED.**

FRANCHINI, J., and FLORES, N.M. Court of Appeals Judge, concur.